IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Tyrell Hiller, ) | C/A No. 3:20-cv-00056-SAL |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **OPINION & ORDER** |
| Wal-Mart Stores East, LP, Walmart, Inc., ) | |
| and Wal-Mart Real Estate Business Trust, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Defendants Wal-Mart Stores East, LP, Walmart, Inc., and Wal-Mart Real Estate Business Trust's ("Defendants") Motion for Summary Judgment (the "Motion"). [ECF No. 25.] For the reasons set forth herein, the Motion is granted.

## BACKGROUND & PROCEDURAL HISTORY

This case stems from a shooting that occurred in the vestibule of a Walmart located at 7520 Garners Ferry Road, Columbia, South Carolina (the "Walmart store"). Plaintiff Tyrell Hiller ("Plaintiff") was injured in the shooting, and he brought this negligent security action against Defendants.

**I.   Undisputed Facts.**

On December 24, 2016, Plaintiff and three other individuals were shopping in the Walmart store. [ECF No. 25-2, Pl.'s Dep. at 38:15–21, 41:3–6; *see also* ECF No. 1-1, Compl. at ¶ 11.] As Plaintiff exited the store, he saw Mr. Elliott Caldwell ("Caldwell") sitting in the store vestibule. Pl.'s Dep. at 42:4–15, 43:20–44:7, 59:5–11; [ECF No. 25-3 Caldwell Dep. at 24:20–21.] As explained in further detail below, Plaintiff and Caldwell knew each other and had previous interactions. On the day at issue, Caldwell had been dropped off at the front entry and was sitting

1

on a motorized scooter waiting for his ride to park and enter the store.  Caldwell Dep. at 23:2–9, 23:25–6, 24:11–18.  As Plaintiff passed Caldwell, the two exchanged words.  Pl.'s Dep. at 43:23–44:7, 56:14–19; Caldwell Dep. at 25:7–26:2.  Plaintiff proceeded to exit the Walmart store.  Pl.'s Dep. at 44:8–13, 56:18–57:4; Caldwell Dep. at 25:11–16.

After exiting the store and entering the parking lot, Plaintiff turned around and reentered the vestibule.  Pl.'s Dep. at 44:9–13, 57:2–15; *see also* Caldwell Dep. at 26:7–10.  Plaintiff testified that he "turn[ed] immediately around" after exiting the building.  Pl.'s Dep. at 57:2–4.  As soon as Plaintiff reenters the vestibule, Caldwell "jump[s] up," Pl.'s Dep. at 57:4, and begins shooting at Plaintiff.  Pl.'s Dep. at 116:15–16; Ex. H at 04:28:11 PM.  Caldwell shot and injured Plaintiff.

Caldwell testified that he was sitting in the vestibule for approximately five minutes before the shooting.  Caldwell Dep. at 23:6–9, 19–24.  Four surveillance videos show Plaintiff exit the store, walk in a circle in the parking lot, and reenter the store before Caldwell starts shooting.  [*See* ECF Nos. 25-6,[1] 25-7,[2] 25-8,[3] 25-9.[4]]  The time between when Plaintiff first exits the building and then renters the building is just under one minute.  [ECF No. 25-6 at 4:27:10 PM (showing Plaintiff exit

---

[1] At timestamp 4:27:10 PM, Plaintiff, wearing a white shirt, black jacket with white stripes down the sleeves, and dark pants and shoes, is shown exiting the vestibule from the left side of the frame.  Caldwell is shown sitting on the scooter closer to the right side of the frame.  By 4:27:11 PM, Plaintiff is completely outside of the sliding doors.  [ECF No. 25-6.]
[2] At timestamp 4:27:31 PM, Plaintiff enters the upper right corner of the frame.  The video shows him enter the parking lot, walk in a couple of circles, and then proceed to walk toward another set of sliding doors to the vestibule.  By 4:27:52 PM, Plaintiff exits the frame.  [ECF No. 25-7.]
[3] At timestamp 4:27:53 PM, Plaintiff is shown from the right side of the frame approaching a set of doors to reenter the Walmart store.  At 4:28:00 PM, Plaintiff stops before entering the doors, takes a step back, allows a group of individuals to enter in front of him, and Plaintiff then exits the frame at 4:28:06 PM.  [ECF No. 25-8.]
[4] The video shows several people entering and exiting the store vestibule and also shows Caldwell on the scooter.  At timestamp 4:28:08 PM, Plaintiff's shoes are seen inside the vestibule to the left side of the frame.  At timestamp 4:28:10 PM, Caldwell begins to stand from the scooter.  At 4:28:11 PM, Plaintiff is seen looking at Caldwell and crouching and/or turning to run out of the vestibule.  And by 4:28:12 PM, Caldwell is standing and firing the gun.  [ECF No. 25-9.]

the building); ECF No. 25-8 at 4:28:05 PM (showing Plaintiff beginning to reenter the building with a group).] And the time between when Plaintiff reenters the building and Caldwell starts shooting is less than 10 seconds. [ECF No. 25-9 (showing Plaintiff reenter the vestibule and Caldwell start shooting)]; *see also* Caldwell Dep. 25:5–6 ("[W]hen I see him walk back in towards me, I shot him."); Pl.'s Dep. 121:1 ("Everything happened (snaps fingers) like that.").

Following the December 24 shooting, Caldwell pleaded guilty to a charge of attempted murder and receives a 4-year sentence. [ECF No. 25-4.]

As noted above, however, the December 24 shooting was not the first interaction between Plaintiff and Caldwell. The same year, approximately one or two months prior, Plaintiff and Caldwell were involved in a physical altercation that resulted in Plaintiff shooting Caldwell at another establishment, the African Flower. Pl.'s Dep. at 50:2–52:12; Caldwell Dep. at 13:9–17:24, 29:6–21. Caldwell accused Plaintiff of "sho[oting] up his house," and a physical altercation ensued. Pl.'s Dep. 51:9–52:10. In that incident, Caldwell had a gun, the gun dropped to the floor, Plaintiff obtained possession of the gun, and Plaintiff fired at Caldwell. *Id.*; *see also* Caldwell Dep. 14:1–13. Plaintiff shot Caldwell in the leg. Caldwell Dep. at 16:10–16. Caldwell had surgery following the shooting to insert a rod into his leg. *Id.* at 16:17–21. Caldwell was still in physical therapy for his leg at the time of the December 24 shooting. *Id.* at 17:5–7.

## II. The Lawsuit.

On December 3, 2019, Plaintiff filed this negligence action against Defendants in the Court of Common Pleas for Richland County, South Carolina. [ECF No. 1-1.] Plaintiff alleges that Defendants were negligent in failing to provide security sufficient to prevent the foreseeable risk of the shooting upon the premises. *Id.* On January 6, 2020, Defendants removed the action to this court on the basis of diversity jurisdiction. [ECF No. 1.]

On April 12, 2021, Defendants filed the Motion that is the subject of this order, seeking judgment as a matter of law on Plaintiff's negligence claim. [ECF No. 25.] Defendants argue that Plaintiff cannot establish that the third-party criminal act was foreseeable or that Walmart employed unreasonable security measures. Plaintiff opposes the Motion, arguing prior criminal activity on the premises rendered the third-party criminal act foreseeable and Defendants failed to ensure adequate safety measures were in place when they failed to stop Caldwell and question him about his 5-minute wait in the vestibule. [ECF No. 26.] Defendants submitted their reply on May 3, 2021, and the matter is now ripe for resolution by the court. [ECF No. 27.]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

4

answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## ANALYSIS & DISCUSSION

Plaintiff's only claim sounds in negligence.  Plaintiff's theory is that Defendants breached a duty owed to him, as a business invitee, to protect him from harm while he was patronizing the Walmart store.  Any claim of negligence requires a plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty; and (3) the breach resulted in injury to the plaintiff.  *See Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 711 S.E.2d 908, 911 (S.C. 2011).  Defendants' Motion focuses on whether Plaintiff can establish the first element—duty of care.  "If there is no duty, the defendant is entitled to judgment as a matter of law."  *Id.*

Here, the parties agree that Plaintiff was an invitee at the time of the shooting. [ECF No. 25-1 at 6; ECF No. 26 at 4.]  "The duty of a storeowner to its invitees is to take reasonable care to protect them."  *Bullard v. Ehrhardt*, 324 S.E.2d 61, 62 (S.C. 1984).  As further clarified by the South Carolina Supreme Court, "a business owner has a duty to take reasonable action to protect its invitees against the *foreseeable* risk of physical harm."  *Bass v. Gopal, Inc.*, 716 S.E.2d 910, 913 (S.C. 2011).  South Carolina has adopted the balancing test to determine foreseeability.  *Id.* at 915–16.[5]

---

[5] In adopting the balancing test, the South Carolina Supreme Court replaced the "imminent harm test" previously adopted in *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 288 S.E.2d 167, 169 (S.C. 1977).

5

The balancing test explains how to determine (1) if a crime is foreseeable and (2) in those instances when a crime is foreseeable, the economically feasible security measures required to prevent such harm. *Id.* at 915. Under the test, "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Id.* Plaintiff bears the burden on foreseeability and feasibility, meaning, to survive summary judgment, Plaintiff must offer some evidence that "a crime of that nature was foreseeable to" Defendants and that the "preventative actions were unreasonable given the risk." *Jenkins v. CEC Enter., Inc.*, 421 F. Supp. 3d 257, 263 (D.S.C. 2019).

Defendants challenge the sufficiency of Plaintiff's evidence to survive summary judgment on both prongs of the balancing test. They argue that Plaintiff has not—and cannot—present evidence that the shooting was foreseeable or that their preventative actions were unreasonable. The court addresses the arguments, in turn, below.

## I. Prong 1: Foreseeability.

The court begins with whether Plaintiff has presented evidence to support foreseeability. Defendants argue the assault at issue was "random, isolated, and unpredictable." [ECF No. 25-1 at 9.] Thus, according to Defendants, "Plaintiff cannot present any evidence that the store could have foreseen that Mr. Caldwell posed a specific threat to Plaintiff." *Id.* To support their affirmative position that the incident was not foreseeable, Defendants point to certain undisputed evidence in the record: Plaintiff's testimony that he was unaware of any Walmart employee seeing or hearing his exchange with Caldwell prior to his first exit from the store; Plaintiff's decision to exit the store and then return to the vestibule; and how quickly the shooting occurred upon Plaintiff's reentry. *Id.* at 9–10.

In addition, Defendants point to an absence of certain evidence that could support Plaintiff's position that the incident was foreseeable. Specifically, Defendants note the lack of reports of suspicious behavior prior to the shooting. And while Defendants acknowledge a drive-by shooting in the store's parking lot in June 2016, Defendants contend such an "isolated incident" is insufficient to establish foreseeability. *Id.* at 10–11.

Plaintiff responds by referencing "prior incidents" at the Walmart store, including the June 2016 drive-by shooting in the parking lot. [ECF No. 26 at 6.] According to Plaintiff, these prior incidents, including the June 2016 shooting, create an issue of fact on foreseeability. *Id.*

In assessing the parties' arguments, the court begins by noting that it appears Defendants' framing of the foreseeability issue is a bit too narrow. The court is not asked to determine whether they knew or should have known that Caldwell was preparing to shoot *Plaintiff* on December 24, 2016. [*See* ECF No. 25-1 at 9 (noting "Plaintiff cannot present any evidence that the store could have foreseen that Mr. Caldwell posed a specific threat to Plaintiff."). Rather, as recently explained by the South Carolina Supreme Court, the question is was "a crime *of that nature* [] foreseeable to [Defendants.]" *Easterling v. Burger King Corp.*, 786 S.E.2d 443, 449 n.2 (S.C. 2016) (emphasis added). *But see Messer v. Muse*, No. 2017-CP-26-03062, 2019 WL 9573821, at *5 (S.C. Ct. Com. Pl. June 21, 2019) ("Defendants cannot be charged with the duty of protecting plaintiff against criminal acts of third parties when it did not know or have reason to know that such acts were occurring or about to occur."). Based on the language from *Easterling*, it seems that if a plaintiff has evidence that a defendant knew that a *specific* plaintiff was subject to a *specific*

threat, the crime would, of course, be foreseeable.[6] However, the crime may still be foreseeable even if a defendant lacks such actual knowledge. *See Ramirez v. Circle K Stores, Inc.*, No. 2015-CP-07-02950, 2017 WL 4620700, at *2 (S.C. Ct. Com. Pl. Feb. 10, 2017) (pointing to lack of evidence that aggressor "ever engaged in or ever threatened violence at the store" and lack of evidence that the store "should have known that [aggressor] posed a danger" to the plaintiff). Thus, the court believes it is appropriate here to ask whether a targeted shooting between two acquaintances was foreseeable to Defendants.

With the above framing of the issue in mind, the court turns to the evidence in the record. In that regard, Plaintiff is correct that "the presence or absence of prior criminal incidents is a significant factor in determining the amount of security required of a business owner, but their absence does not foreclose the duty to provide some level of security if other factors support a heightened risk." *Bass*, 716 S.E.2d at 915. The question then is whether the "prior incidents" or June 2016 shooting constitute evidence that a targeted shooting between two acquaintances was foreseeable to Defendants. The court concludes they are not.

The court first addresses Plaintiff's references to "prior incidents." [ECF No. 26 at 3, 6.] Plaintiff submits that over a two-year period prior to the December shooting, the Walmart store "had a number of incidents, including both minor crimes and violent crimes" to include "robbery, auto break-ins, simple assault, and aggravated assault." *Id.* at 3; *see also id.* at 6 (referencing 1

---

[6] Plaintiff makes brief reference to an employee "tipp[ing] Caldwell as to the presence of Plaintiff at the store" to "increas[e] the foreseeability calculus" [ECF No. 26 at 6.] The problem for Plaintiff is that the only evidence of such a "tip" is hearsay. *See* Fed. R. Civ. P. 56 (c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Further, even if the testimony was not hearsay, it does nothing to establish that the person making the "tip" to Caldwell, let alone Defendants, knew that it would result in a shooting. As a final note, the hearsay issue is the subject of a motion in limine, ECF No. 35, that is unopposed by Plaintiff. [*See* ECF No. 36 ("Plaintiff does not oppose this Defendant's[sic] motion.").]

robbery, 32 auto break-ins, 16 simple assaults, and 7 aggravated assaults between October 2016 and October 2018).  There are two problems with Plaintiff's reliance on the "prior incidents" at summary judgment.  First, Plaintiff's two references to the prior incidents in his opposition fail to cite to anything in the record—no deposition testimony, incident reports, or anything else to that effect.  Rule 56(c), FRCP requires a party asserting a fact is genuinely disputed to "support the assertion by [] citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c).  Without reference to materials in the record, the assertion is blanket, conclusory, and fails to support a finding that the "fact" is genuinely disputed.  *See, e.g., Jenkins*, 421 F. Supp. 3d at 264 n.4 (noting similar failures by plaintiff; "Nor do they attach to their response the supplemental discovery responses.").

Second, even if Plaintiff presented the court with specific materials evidencing the prior incidents, such incidents (at least as described by Plaintiff) are not sufficiently similar to the shooting at issue in this case.  In *Easterling*, the South Carolina Supreme Court addressed a similar scenario and came to the same conclusion.  There, the plaintiff was physically assaulted by another customer in the defendant's drive-thru lane.  The plaintiff presented a prior incidents report for the restaurant that showed "one incident of armed robbery" four years prior, 786 S.E.2d at 449–50, as well as "car accidents, disturbances, theft, suspicious persons, and other petty or nonphysical crimes." *Id.* at n.3.  The court concluded that "although the prior incidents report indicated a pattern of police responding to problems at this [restaurant], none of the incidents were remotely similar to that which occurred on the night in question." *Id.* at 450.  For that reason, the court concluded that the plaintiff failed to produce any evidence that a physical assault was foreseeable to the defendant.  The same problem for Plaintiff exists here.  Even if the court considers Plaintiff's reliance on the robbery, auto break-ins, simple assaults, and aggravated assaults that preceded the

December shooting, the court does not have any reason to believe these incidents were, using the language of *Easterling*, "remotely similar" to the targeted shooting between two acquaintances that occurred on December 24, 2016.

Because Plaintiff has not properly supported the "prior incidents" with materials in the record, the court is left with the June 2016 drive-by shooting and one question: Is the June 2016 incident alone sufficient to create a jury triable issue on foreseeability?  Having thoroughly considered the limited case law and trial court orders on this issue, the court concludes it is not.

Take *Easterling* as one example.  There, the court was presented with one specific prior incident, an armed robbery on the premises.  *Id.* at 449.  The court found that the "isolated armed robbery incident" was "insufficient to establish a physical assault was foreseeable." *Id.* at 450.  In reaching this conclusion, the court noted, however, that the incident "occurred four years prior to" the incident at issue in that case.  *Id.*  This case similarly involves one isolated incident, a drive-by shooting in the parking lot of the Walmart store.

One difference between this case in *Easterling*, however, is timing.  The drive-by shooting incident here occurred just a few months before the December shooting that is the subject of this action.  Ultimately, while the court acknowledges that the sole incident here is closer in time than the sole incident in *Easterling*, the fact remains that in both cases, the incidents were unquestionably isolated.  Nothing about the June 2016 drive-by parking lot shooting would make the December 2016 targeted shooting in the vestibule foreseeable to Defendants.  Accordingly, the court finds that Plaintiff failed to produce sufficient evidence that a targeted shooting between acquaintances was foreseeable to Defendants.

## II. Prong 2: Reasonableness of Security Measures.

Briefly, the court turns to the second prong of the balancing test—the reasonableness of Defendants' security measures. In this case, even if the crime was foreseeable, the court concludes that Plaintiff failed to produce any evidence that Defendants' security measures were unreasonable.

Plaintiff ties the reasonableness of the security measures to the amount of time Caldwell was waiting in the store's vestibule. Plaintiff argues that Caldwell was in the vestibule for five minutes and no one asked him if he needed any assistance. [ECF No. 26 at 7–8.] According to Plaintiff, if someone approached Caldwell it would have "served as a deterrent to the assault." *Id.* at 7.

Plaintiff's security measures argument suffers from the same problems as his foreseeability argument. It is unsupported by the record and the case law.

While it is undisputed that Caldwell was in the vestibule for approximately five minutes, the only testimony in the record provides that his presence in the vestibule was <u>not</u> suspicious. William Matthews, Defendants' representative, testified that they "have a lot of customers that ride buses and wait for transportation services to pick them up, and sometimes [they] have people in the parking lot waiting for those rides for 30, 40 minutes." [ECF No. 26-2, Matthews Dep. 24:13–25.] Clay Reyer, the store's Asset Protection Manager, confirmed that before entering the asset protection office, he did not observe any suspicious behavior. [ECF No. 26-3, Reyer Dep. at 38:1–5; *see also id.* at 11:16–24 (stating he did not observe anything in the vestibule area prior to the gunshots).] Moreover, the surveillance video shows people constantly entering and exiting the store, as well as moving about the vestibule. Plaintiff simply fails to present any evidence that Caldwell's presence in the vestibule for five minutes made anyone, let alone Defendants, suspicious of his presence.

11

Relatedly, Plaintiff does not present any evidence to support his blanket assertion that approaching Caldwell "would have served as a deterrent to the assault." [ECF No. 26 at 7.] In *Easterling*, the plaintiff had a security expert who testified to the security measures the defendant could have implemented. 786 S.E.2d at 450. Notably, Plaintiff does not have any expert testimony in this case. *Id.* (referencing the "lack of testimony from Easterling's expert calling for such a measure"). Yet, even if Plaintiff had an expert who would testify that employees should be trained to recognize and intervene in suspicious situations (as did the plaintiff's expert in *Easterling*), there remains nothing in the record before this court to show how Defendants "failed to implement [such a measure] in this case." *Id.* As outlined above, there is no testimony in the record showing that the situation was suspicious.

And much like in *Easterling*, "[a]ll accounts indicate the incident, while tragic, happened very quickly and created only a small window of time within which [Defendants'] employees could react and call for assistance." *Id.* No one in this case disputes how quickly the shooting happened following Plaintiff's reentry into the vestibule. Mere seconds. The snap of fingers. Pl.'s Dep. 121:1 ("Everything happened (snaps fingers) like that."). Therefore, the court concludes that Plaintiff failed to present evidence that Defendants' actions were unreasonable or that it could have and should have done more to prevent the shooting.

In sum, even viewing this case in the light most favorable to Plaintiff, the court finds Plaintiff has not met his burden to survive summary judgment. There is simply insufficient evidence in the record to show that Defendants did not execute economically feasible security measures to prevent a targeted shooting between acquaintances in the store's vestibule. Based on both a lack of foreseeability and a showing that Defendants' preventative measures were not unreasonable, Plaintiff has not established that Defendants owed him a duty to protect him from Caldwell's

criminal act. *Jenkins*, 421 F. Supp. 3d at 264. Without the existence of a duty, summary judgment in favor of Defendants on the sole negligence claim is proper.

## CONCLUSION

For the foregoing reasons, Defendants Wal-Mart Stores East, LP, Walmart, Inc., and Wal-Mart Real Estate Business Trust's Motion for Summary Judgment, ECF No. 25, is **GRANTED**. As a result, the pending Motion in Limine, ECF No. 35, is **MOOT**.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

March 8, 2022
Florence, South Carolina